BEER ET AL., APPELLEES, *v.* GRIFFITH ET AL., APPELLANTS.

[Cite as Beer v. Griffith (1980), 61 Ohio St. 2d 119.]

(No. 79-56—Decided January 30, 1980.)

*Messrs. Knell & Freehafer* and *Mr. George H. Knell,* for appellees.

*Messrs. Laughbaum & Eckstein* and *Mr. Rolland E. Laughbaum,* for appellants.

WILLIAM B. BROWN, J.   While we affirm the judgment of the Court of Appeals, our analysis is different. Before discussing the issues, we briefly outline some relevant facts.

### I.

The leased property included approximately 150 acres. As of the time of trial, lessee had drilled at least four wells on the property. One well was producing oil at all relevant times. A second well was dry. A third, Well No. 2-A, was near completion and apparently has production potential. Drilling on a fourth, Well No. 11-A, was terminated by municipal officials due to an error in lessee's permit application.

Lessor acquired working interests in Wells No. 2-A and in No. 11-A pursuant to separate agreements, each requiring an initial payment to lessee and an optional second payment to cover completion costs subsequent to lessee's initial drilling and upon lessee's determination that further drilling on either well would be desirable. Lessor's optional second payments were each conditions of it retaining these working interests.

## II.

With respect to the lease, the dispute concerns whether lessee either abandoned the lease or breached an implied covenant to develop the land; and also whether cancellation or forfeiture was an appropriate remedy. Lessor does not here dispute that lessee complied with the express provisions of the lease, including the provisions of its *habendum* clause.[1]

First, the record supports neither the trial court's nor Court of Appeals' determination that lessee abandoned the lease, in whole or in part. Abandonment of an oil and gas lease can exist only where there is an intent to abandon the property. See *Williams* v. *Champion* (1833), 6 Ohio 169, 171. The record is simply barren of evidence that will support a finding that lessee had such an intention.

Second, while lessee did not violate any express provision of the lease, lessee did breach "an implied covenant***to reasonably develop the lands***." *Harris* v. *Ohio Oil Co.* (1897), 57 Ohio St. 118, 127. Lessee had about 25 judgment liens filed against it and was in receivership by the time proceedings in the Court of Appeals commenced. Certain third parties, possibly lessee's creditors or assignees, removed casing from Well No. 2-A whose production, lessee said, was imminent. Drilling on Well No. 11-A was terminated by municipal authorities due to an error in lessee's application for a drilling permit. Lessee told lessor that this error could be easily corrected but made no further efforts to secure the permit. Additionally, as of the time of trial, lessee had performed no work on the leased property for over one year. On these facts, we conclude that lessee breached its implied covenant to reasonably develop the land.

Lessee's breach of the above implied covenant, however, is not *itself* sufficient to work a forfeiture. Since "certain causes of forfeiture***[are] specified in the lease, others can-

---

[1] The *habendum* clause of the lease reads as follows:

"It is agreed that this lease shall remain in force for a primary term of One years from this date and if lessee shall commence to drill within said primary term or any extension thereof, the said lessee shall have the right to continue drilling to completion with reasonable diligence and said term shall extend as long thereafter as oil and gas, or either of them, is produced by lessee from said land or from a communitized unit as hereinafter provided."

not be implied. Under such a lease, the remedy for a breach of an implied covenant, is not by way of forfeiture of the lease, in whole or in part, but by an action for damages caused by such breach." *Harris* v. *Ohio Oil Co., supra,* paragraphs two and three of the syllabus.

Nevertheless, we sustain the Court of Appeals' determination that partial forfeiture (or cancellation) is the appropriate remedy. Even if lessee had sufficient resources from which to pay damages,[2] lessee's continued interest in the entire leasehold, because of lessee's financial and operating difficulties, would render a mere damage award inadequate. With respect to the wells which will require further efforts to be productive (Wells No. 2-A and No. 11-A), and also with respect to all unexploited acreage, forfeiture of lessee's interest is warranted in order to assure the development of the land and the protection of lessor's interests. See *Coffinberry* v. *Sun Oil Co.* (1903), 68 Ohio St. 488, 496-500. On the other hand, with respect to the one well which is already productive, forfeiture would be inappropriate. The record does not indicate that lessee's continued interest in this well and its 40-acre site would compromise the development of the land or would otherwise unfairly burden lessor.[3] Thus, we sustain the Court of Appeals' modification of the trial court's decree, validating and enforcing the lease as to the one producing well and its related acreage, and cancelling the lease as to the other wells and as to the remaining acreage.

### III.

In connection with the working interest agreements, the dispute concerns whether lessee improperly solicited payments from lessor, and whether lessee otherwise complied with the terms of the agreements.

Lessor initially paid lessee $11,000 for a working interest in Well No. 2-A. Later, pursuant to the terms of their agree-

---

[2] Since lessor has not on appeal raised the issue of money damages in connection with the lease, we do not consider whether money damages could herein be ascertained.

[3] We note that lessor has not argued that lessee's operation of the one producing well has been substandard, or that lessee's continued interest in this well will necessitate on-going judicial supervision.

ment, lessor paid an additional $13,580 in completion costs to retain its interest upon lessee's determination that further drilling was desirable. The trial court awarded lessor the above completion costs of $13,580 in damages because "the well was never completed." The Court of Appeals set aside this award, finding that the "payment of $13,580 represent[ed] a business decision to invest in an operation which***[lessor] knew or should have known could have no guaranteed return." We agree. The evidence is insufficient to prove lessee solicited this payment fraudulently, in bad faith, or that the money was not expended to complete drilling operations at Well No. 2-A. Thus, the Court of Appeals properly set aside the damage award of $13,580.

For its working interest in Well No. 11-A, lessor initially paid $10,000. After municipal authorities terminated lessee's drilling due to an error in lessee's permit application, lessee returned $3,000 to lessor. The trial court found that lessee improperly solicited the $10,000 payment by misrepresenting to lessor that the necessary permits were secured, and awarded lessor $7,000 (*i.e.,* the outstanding balance) in damages. The Court of Appeals sustained this award, determining the evidence to require a finding of fraudulent inducement. The Court of Appeals' determination is correct. The evidence is uncontroverted that lessee knew a necessary municipal permit had not yet been secured, that lessee intentionally misrepresented to lessor that it had been secured, that lessor relied on lessee's misrepresentation, and that lessor was injured as a result. See *Schwartz* v. *Capital Savings & Loan Co.* (1978), 56 Ohio App. 2d 83, 86; *Klott* v. *Associates Real Estate* (1974), 41 Ohio App. 2d 118, 120-121.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C. J., HERBERT, SWEENEY, LOCHER and HOLMES, JJ., concur.