**AMERICAN ENERGY SERVICES, INC., Appellee,**

**v.**

**LEKAN, Appellant.**

[Cite as *Am. Energy Serv., Inc. v. Lekan* (1992), 75 Ohio App.3d 205.]

Court of Appeals of Ohio,
Ashland County.

No. CA–986.

Decided Feb. 12, 1992.

206

*Geiger, Teeple, Smith & Hahn* and *Bruce E. Smith,* for appellee.

*Henderson, Harpster, Vanosdall & Vercillo* and *Damian J. Vercillo,* for appellant.

---

PUTMAN, Presiding Judge.

This is an appeal from a judgment of the Court of Common Pleas of Ashland County, Ohio, that granted summary judgment in favor of plaintiff-appellee, American Energy Services, Inc. ("appellee"), on its complaint against defendant-appellant, James V. Lekan ("appellant"), that contained five claims for relief with respect to an oil and gas lease encumbering appellee's property. The summary judgment granted by the trial court states:

"ORDERED, ADJUDGED AND DECREED that the oil and gas lease dated August 10, 1968, and recorded in Volume 59, Page 234, of the Ashland County Records, is hereby cancelled and plaintiff's title forever quieted against same free of any and all rights or claims of the defendant thereunder, and it is further

"ORDERED, ADJUDGED AND DECREED that defendant has by his conduct abandoned any and all right, title and interest in the well upon the plaintiff's premises and the associated equipment thereon and title to such is hereby vested in the plaintiff."

Appellant assigns the following as error:

## Assignment of Error No. I

"The trial court erred in granting plaintiff-appellee's motion for summary judgment pursuant to Ohio Civil Rule 56 as said ruling was contrary to law and was not sustained by the evidence."

## Assignment of Error No. II

"The trial court erred in overruling defendant-appellant's motion for summary judgment pursuant to Ohio Civil Rule 56 as said ruling was contrary to law and was not sustained by the evidence."

## Assignments of Error Nos. I and II

As these two assigned errors raise the single claim that the trial court's judgment is contrary to law, they will be addressed together.

In response to our Loc.App.R. 4(D), appellant states that the trial court's judgment is inappropriate on the undisputed facts, and that "[a]t a minimum, the summary judgment of forfeiture and abandonment is erroneous because of genuine factual disputes."

■ When reviewing summary judgments, we conduct an independent review of the record and stand in the shoes of the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36, 30 OBR 78, 79, 506 N.E.2d 212, 215. We review the same evidentiary materials that were properly before the trial court at the time it ruled on the summary judgment motion.

■ Upon review of this evidence, we find that the material and undisputed facts are accurately and comprehensively set forth by the trial court in its opinion of May 7, 1991 (a copy of which is attached as an Appendix to this opinion), and that based upon these undisputed facts, reasonable minds could only reach one conclusion, and that conclusion is adverse to appellant. We are in particular agreement with the trial court's observation that the oil and gas lease expired by its own terms, thus terminating any interest of appellant in the leasehold.

Accordingly, both assigned errors are overruled and the judgment of the Court of Common Pleas of Ashland County, Ohio, is affirmed.

*Judgment affirmed.*

Smart and Gwin, JJ., concur.

APPENDIX

May 7, 1991.

ROBERT E. HENDERSON, Judge.

This cause has come before the court upon motions for summary judgment filed on behalf of both plaintiff, American Energy Services, Inc., and defendant, James V. Lekan. The court heard oral arguments on the same, was favored with extensive briefs from both parties, has considered the deposition of James V. Lekan, and makes the following determination with regard to the motions for summary judgment.

Plaintiff in this case is the owner, in fee simple, of real estate located in Clearcreek Township, Ashland County, Ohio, which consists of 214.095 acres, more or less, as the same is described in the complaint filed herein. The evidence indicates that William R. and Nellie Ethel Moyers, husband and wife, were predecessors in title to the plaintiff. The evidence further indicates that on August 10, 1968, William and Nellie Moyers entered into an oil and gas lease with Oil & Realty Developments, Inc., as lessee. This lease was recorded in Volume 59, Page 234–235, Ashland County Lease Records.

The court further finds that the term of the oil and gas lease was stated in said lease described hereinabove as follows:

"It is agreed that this lease shall remain in force for a primary term of five years from this date, and if lessee shall commence to drill within said primary term or any extension thereof, the said lessee shall have the right to continue drilling to completion, with reasonable diligence and said term shall extend as long thereafter as oil and gas, or either of them, is produced by lessee from said land or from a communitized unit as hereinafter provided."

By an instrument dated September 27, 1971, Oil & Realty Developments, Inc. assigned to the defendant a drillsite upon the plaintiff's property of approximately 40.5 acres, more or less, as more fully described in said instrument. A full copy of the assignment was attached to the complaint filed in this case, and is recorded in Vol. 62, Pg. 71, Ashland County Lease Records.

In 1990, by instrument recorded with the Ashland County Recorder's Office, Oil & Realty Developments, Inc. released the aforementioned oil and gas lease as it affects the balance of the acreage.

The evidence further indicates that on October 8, 1972, the defendant, through his agents, commenced the drilling of the Moyers No. 1 Well upon the 40.5 acre drillsite. This well was ultimately completed in September 1973. To date, the defendant has never produced any gas or oil from the Moyers No. 1 Well since its completion in September 1973, and the well has never been hooked into a gas line for purposes of gas sales.

The court further finds that on February 5, 1990, plaintiff filed its complaint herein against the defendant alleging in its first claim that the subject oil and gas lease has expired by its own express terms and asks the court to enter an order terminating same and releasing it of record. Plaintiff, in its second claim, alleges that defendant has failed to pay to plaintiff the royalties to which it is entitled and to account to plaintiff for production if defendant claims he has produced oil and/or gas from the Moyers No. 1 Well. Plaintiff, in its third claim, alleges that the defendant's action in failing to produce the Moyers No. 1 Well, and for failure to pay rentals and/or royalties, and for failure to account to plaintiff for production, and failure to carry out the other obligations imposed upon him by the terms of the oil and gas lease constitute an abandonment by defendant of the leasehold estate and plaintiff is asking the court to forfeit title to the equipment remaining upon the leasehold and find that title thereto is now vested in the plaintiff. In its fourth claim, plaintiff again alleges that the oil and gas lease is terminated by its express terms and since defendant has failed to remove the equipment thereon within a reasonable period of time after the termination of the lease, plaintiff is asking the court to grant the same relief as requested upon the third claim. In its fifth claim, plaintiff alleges that the defendant, by his conduct, has failed to exercise reasonable care and due diligence in operating and producing the Moyers No. 1 Well and has thereby breached the implied covenant to reasonably operate the leasehold premises and the implied covenant to produce the well. In effect, the relief sought by plaintiff upon its fifth claim is an order forfeiting the rights claimed by defendant in the premises.

Defendant has also filed a motion for summary judgment in his favor, has attached an affidavit to such motion and his deposition taken by the plaintiff herein has been previously filed in this case. In defendant's affidavit, he states that he has commenced the drilling of an oil and gas well on this forty-acre drill site on or about October 8, 1972 and that he completed the drilling of said well on or about September 18, 1973. His affidavit states that it took this period of time to complete the drilling of the well because of mechanical problems with the equipment encountered by the defendant and because the drilling operations were shut down for the winter. Defendant also states that he has been involved in the oil and gas business since the mid 1960s, although not extensively involved. Defendant further states that he has always believed and continues to believe that the well in question is capable of production, but that it has not been produced. The reasons for such non-production include the fact that there has been no market for the products and it has not been economically feasible to produce the well.

Defendant further states in his affidavit that he placed equipment on the well site initially, including a tank battery, two 210 barrels, a separator and heater treater and that this equipment and his investment has cost him approximately $80,000, not including the purchase of certain pipeline.

The affidavit further indicates that in 1986 the well described above developed a leak which was repaired by or for the defendant at a cost of slightly more than $1,300. Defendant further states in his affidavit that while he was the owner and operator of this well that he acquired contiguous rights-of-way and purchased between twelve thousand and fifteen thousand feet of pipeline and had said pipeline run from the well up to a meter house which was a considerable distance away. Defendant further states in his affidavit that he did not cause the gas to be delivered through said pipeline because the transportation costs were too high and that the additional investment for pipeline and construction thereof was approximately $50,000.

Defendant further states, in his affidavit, that from and after completion of the well in question, he made a yearly payment in the nature of a shut-in payment to the Moyerses ("landowners") every year up to and including the time of the death of the last of the Moyerses. He further states that all such payments were accepted by the landowners. After the death of the last of the Moyerses, attorney Hugh Troth administering the Moyers estate accepted one of the annual shut-in payments. Defendant further states that he tendered a second shut-in payment to Troth the following year, but said payment was not accepted by Troth, but was never returned. Defendant further states that each and every year thereafter he tendered to the owners of record the shut-in payment including a payment being tendered to the plaintiff in the above-captioned case, which payment was tendered at the appropriate time. Since the deaths of the Moyerses and since the acceptance of one of the annual shut-in payments which was accepted by Troth, none of the tendered payments has been negotiated by the present owners, the plaintiffs herein.

Defendant in his affidavit further states that the equipment presently on the lease is operable and has value far in excess of that which was estimated by plaintiff's expert.

Civ.R. 56(C) provides in pertinent part, as follows:

"Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law * * *. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one

conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

This court finds that defendant herein has breached the express terms of the contract under which he claims his rights, that being the oil and gas lease between Mr. and Mrs. Moyers and Oil & Realty Developments, Inc., which was dated August 10, 1968. It is this document that establishes the rights and obligations between the parties. The contractual intent and substance of the agreement between the parties is set forth and established in the habendum clause. The habendum clause in the oil and gas lease is two tiered. The first tier, or primary term, is of definite duration and is five years in this case. The second tier is of indefinite duration and operates to extend the lessee's rights under the lease so long as the conditions of the secondary term are met. The habendum clause in the subject oil and gas lease provides the following:

"It is agreed that this lease shall remain in force for a primary term of five years from this date and if lessee shall commence to drill within said primary term or any extension thereof, the said lessee shall have the right to continue drilling to completion, with reasonable diligence and said term shall extend as long thereafter as oil and gas, or either of them, is produced by lessee from said land, or from a communitized unit as hereinafter provided."

The court finds that for the lessee or lessee's assignee to continue the secondary term of this lease and to give the assignee his ability to claim rights thereunder, he must continue to produce oil and gas, or either of them, from the leased premises. If after the expiration of the primary term the conditions of the secondary term are not continuing to be met, the lease terminates by the express terms of the contract herein and by operation of law and revests the leased estate in the lessor. See *Gisinger v. Hart* (1961), 115 Ohio App. 115, 20 O.O.2d 226, 184 N.E.2d 240.

The deposition of defendant taken on October 19, 1990 indicates that the Moyers No. 1 Well was commenced on October 8, 1972, but not completed until September 18, 1973. Defendant testified as follows:

"Q: Now, on your Moyers No. 1 Well, does this well produce both gas and oil?

"A: It's capable, yeah. The log shows both, hydrocarbons—

"Q: Has the well actually ever been placed in production?

"A: Never.

"Q: So by your testimony, since it was completed in 1973, it has been shut-in continuously since that time?

"A: Right, there's never been any gas that has been sold."

The evidence in this case also indicates that the well has never been capable of producing gas since it has never been connected to a gas line. Defendant testified in his deposition with regard to this matter as follows:

"Q: Going back to my original question, is the Moyers No. 1 Well connected to pipelines at this date?

"A: It's not actually connected, no.

"Q: Has it ever been connected to pipelines?

"A: No."

This court further notes that in defendant's deposition he further testified as follows in response to the next two questions:

"Q: I noticed you of this deposition. I also requested that you produce certain documents and one of my requests was that I wanted a copy of any and all production records from the date of first production to the present date and you are telling me there are no such records?

"A: Well, there was no production.

"Q: And I also asked you for a record or report of any distributions to the working interest or others for the payments of royalties or overriding royalties and your testimony is that none of that exists?

"A: Zero, there isn't any."

The court, therefore, finds that the defendant has allowed the Moyers No. 1 Well to exist upon plaintiff's property for a period of over seventeen years without producing anything even though defendant opined in his deposition that the well is capable of production.

"Q: In your opinion, is the Moyers No. 1 Well capable of producing?

"A: Sure it is. It's a billion cubic air of gas and $35,000.00 or $40,000.00 of oil estimated by Mr. Thornbury and Bob Wood."

The fact that this Well had capability of producing both oil and gas, but has been allowed to sit idle for a period of better than seventeen years, reflects upon the good faith of this defendant in the conduct of his operations upon this leasehold. After all, he is not the owner of the land. A landowner enters into a lease with an oil and gas driller for the purpose of having the land produced so that oil and gas can be produced from said land to which the landowner is then entitled to a certain royalty interest.

The court further finds in this case that potential for production is not enough to hold a lease in its secondary term. The law of Ohio requires that potential production be translated into actual production. See *Murdock–West Co. v. Logan* (1904), 69 Ohio St. 514, 69 N.E. 984. See, also, *Tedrow v. Shaffer* (1926), 23 Ohio App. 343, 155 N.E. 510, where the court of appeals

found that the lease there in issue had expired upon the expiration of its primary term of ten years even though on the final day of that term the lessee pumped a small amount of oil from the well. The court went on in that case to note that the lessee had a continuing duty to extract oil or gas from the well and that where that duty was not met, midnight-hour attempts to save the lease would not be sufficient.

This court has read cases where courts have recognized that lessees can still have valid lease rights after a reasonable period of non-production for certain valid purposes. However, when interruptions occur, the lessee is obligated to exercise reasonable diligence to place the well back into production. See *Wagner v. Smith* (1982), 8 Ohio App.3d 90, 8 OBR 124, 456 N.E.2d 523, wherein the court considered a factual situation where there was non-production for a period of one and one-half years to two years resulting from a water leak into the casing. The court went on to find in that case that the lessee's rights under the lease had lapsed. That court took into consideration the circumstances of non-production, the cause of the non-production, and the length of time of non-production. The lessee in that case lost his lease rights even though he offered an explanation relating to difficulties in determining the most efficient means of repairing the problem and difficulties in contacting and obtaining agreements from minority interest owners. In the case at bar, we have a defendant-operator who drilled and completed a well and then allowed the well to sit for a period of seventeen years or better without producing the same and without generating any economic benefit for the property owner whose land is encumbered. This court, therefore, finds that it must terminate any interest claimed by the defendant in the subject leasehold premises pursuant to the very terms of the lease itself.

One other clause of the lease should be noted at this time since, by the defendant's testimony in his deposition, the well was not completed at the expiration of the five-year primary term of the lease and drilling operations were apparently continuing at that date.

The fourth paragraph from the bottom of the first page of the lease provides as follows, in pertinent part:

"If at the expiration of the primary term, oil, gas or other mineral is not being produced on said land, or on acreage pooled therewith, but Lessee is then engaged in drilling or reworking operations thereon or shall have completed a dry hole thereon within sixty (60) days prior to the end of the primary term, the lease shall remain in force so long as operations on said well or for drilling or reworking of any additional well are prosecuted with no cessation of more than sixty (60) consecutive days, and if they result in the

production of oil, gas or other mineral, so long thereafter as oil, gas or other mineral is produced from said land or acreage pooled therewith."

Here we have a cessation of operations or drilling activities in excess of seventeen years. Defendant's activities have not resulted in the production of oil, gas or other mineral. This is further indication that this court must terminate any interest claimed by the defendant in these subject premises.

In addition, Ohio courts have recognized that certain obligations are imposed upon the parties to an oil and gas lease not only by the terms of the lease itself but also by operation of law. These obligations are referred to as "implied covenants."

 This court therefore finds that in every lease, unless it is specifically excluded, there is an implied condition that the lessee will operate the lease with due diligence. See *Tedrow v. Shaffer, supra.* The court finds that the subject oil and gas lease does not by its language negate the imposition of implied covenants. There are several generally recognized implied covenants in oil and gas leases and these include the following:

1. The covenant to drill an initial exploratory well.

2. The covenant to protect the lease from drainage.

3. The covenant of reasonable development.

4. The covenant to explore further.

5. The covenant to market the product.

6. The covenant to conduct all operations that affect the lessor's royalty interest with reasonable care and due diligence. See 5 Williams & Meyers, Oil and Gas Law (1991).

 The covenant to market the product places an obligation upon a lessee to use due diligence to market the gas and/or oil produced from a well. This covenant is not eliminated by a shut-in royalty clause. A shut-in royalty clause modifies the habendum clause so that the lease may be preserved between the time of discovery of product and marketing of the same. It is a savings clause, but it certainly does not negate the duty to use due diligence to sell the production. The court finds that after reviewing all of the facts in this case the defendant has failed to conduct all operations that affect the lessor's royalty interest with reasonable care and due diligence.

In *Beer v. Griffith* (1980), 61 Ohio St.2d 119, 15 O.O.3d 157, 399 N.E.2d 1227, the lessee had completed one producing well on the property but was unable to complete a second well due to insolvency. The second well remained partially completed for approximately one year. The lessor instituted an action to obtain a forfeiture of the lease. The court noted that absent express

provisions to the contrary, an oil and gas lease includes an implied covenant to reasonably develop the land. In this case, the oil and gas lease does not contain a clause that negates the imposition of implied covenants. The court in relying upon its decision in *Harris v. Ohio Oil Co.* (1897), 57 Ohio St. 118, 48 N.E. 502, noted that where certain causes of forfeiture are specified in an oil and gas lease, others cannot be implied. Under such a lease, the court found the remedy for a breach of an implied covenant, without more, to be damages, and not forfeiture of the lease, whole or in part. The court went on, however, to note that where legal remedies are inadequate, forfeiture or cancellation of an oil and gas lease, in whole or in part, is an appropriate remedy for a lessee's violation of an implied covenant. In *Beer*, the court forfeited a portion of the oil and gas lease in issue. In doing so, the court noted that the lessee had performed no work on the leased premises for over one year. The court also took notice of the lessee's financial and operating difficulties, which it felt would render a mere damage award inadequate. In forfeiting a portion of the undeveloped acreage, the court noted that it was doing so in order to assure the development of the land and the protection of the lessor's interest.

In *Ionno v. Glen–Gery Corp.* (1983), 2 Ohio St.3d 131, 2 OBR 678, 443 N.E.2d 504, the Supreme Court of Ohio again confirmed a limited right to forfeiture for breach of an implied covenant and stated as follows:

"Thus, the *Beer* decision does not stand for the proposition that forfeiture can never be imposed where there is a breach of an implied covenant. Such relief will be granted when necessary to do justice to the parties, even though specific grounds for forfeiture are set forth in the lease."

The court finds in the case *sub judice* that defendant is a man of seventy-five years of age, who is now retired who commenced drilling the Moyers No. 1 Well on October 8, 1972 and never completed it until September 18, 1973. This was the first well that he had ever drilled. While Lekan never produced the Moyers No. 1 Well for a period of seventeen years, he did attempt to make shut-in payments of $40 per annum to the landowners over a substantial period of time, but these were consistently refused for the last several years. This court finds that while the defendant expresses an opinion that the well is capable of production, the well has never been placed into production. At one time defendant did enter into a contract with Columbia Gas of Ohio to sell gas to them from the Moyers No. 1 Well, but not one cubic foot of gas was ever sold under the contract which was only for a period of five months. The Moyers No. 1 Well, in fact, has never been connected to a gas pipeline. Defendant has never seen fit to place the Moyers No. 1 Well into production even though he caused three other wells in the general vicinity to be drilled

and placed into production between 1984 and 1986. The drilling of these four wells constitutes defendant's total experience in oil and gas production in the state of Ohio. This has been conducted as a "mom and pop operation" and the defendant has no other employees at this time to assist him in the operation of the four wells.

The court has examined the exhibits which have been admitted into evidence some of which consist of pictures which clearly reflect the dilapidated condition of the equipment that was placed on the wellsite in 1973. Even at that date, defendant did not place new equipment on the location, but utilized used equipment. The affidavit of Willard E. White, a petroleum engineer, indicates that, in his opinion, attempts at reconditioning the equipment at the Moyers site would not be successful, and that the surface equipment in its dilapidated condition would only be worth approximately $1,500. White also indicated that any attempts to produce or test the well without dismantling, reconditioning or replacing the surface equipment as necessary would create a safety hazard and expose anyone on the leasehold to the potential for serious personal injury.

The court, therefore, finds that in order to "do justice to all of the parties" as was required by the Supreme Court in its pronouncement in *Ionno, supra,* and to protect the lessor's interests, this court must declare a forfeiture of the defendant's claims to rights in the 40.5-acre tract upon which is located the Moyers No. 1 Well and the court is, therefore, quieting plaintiff's title against any claims of the defendant.

▮ Plaintiff does include a claim in its complaint alleging abandonment by the defendant. Ohio courts have recognized that an oil and gas lease may be abandoned by a lessee. See *Wohnhas v. Shepherd* (C.P.1954), 54 O.O. 436, 119 N.E.2d 861. The mere passage of time alone is not sufficient, but the absence of any activity on a leasehold over a substantial period of time is a factor that should be considered in light of all the circumstances leading to a determination of relinquishment of possession, both as to the lease and the equipment thereon. In the case of *North Star Oil & Gas Co. v. Blubaugh* (Oct. 6, 1981), Holmes App. No. CA–328, unreported, 1981 WL 6434, the court had before it a situation where the lessee had ceased operations and removed the surface equipment from the leasehold but left the well casing in the ground. Eight years later the lessee brought an action to prevent the landowner from disposing of the casing. The court in that case ruled that given the passage of eight years, the lessee had abandoned the casing, and title to the same was left in the landowner.

▮ In the case at bar, defendant took approximately one year to originally drill the well in 1973, and has never produced any product from the well nor

has the same ever been connected to any gas pipeline. Used equipment was initially placed upon the wellsite and has been allowed to degenerate into a dilapidated state over the past seventeen years. This indicates to this court an intention on the part of the defendant to do nothing with the Moyers leasehold or the equipment located thereon. The opinion of Willard White clearly indicates the nominal value of the old equipment, and the dangers that it poses. For this court at this late date to allow the defendant to remove the equipment placed thereon, would be to reward him for seventeen years of neglect. During the seventeen-year period, not one benefit has been conferred upon plaintiff or its predecessors in title as a result of the operations that were not conducted by the defendant.

For such reasons, the court finds that defendant has abandoned the leasehold premises and the remaining items of equipment located thereon and the court orders that title to said equipment is vested in the plaintiff who can either attempt to recondition or replace the same and realize some benefit from the hole in the ground, or to remove them and, if it desires, put new equipment upon said land.

For all of the reasons set forth hereinabove, the court sustains the motion of the plaintiff for summary judgment and overrules the motion of defendant for summary judgment, finding that the conduct of the defendant indicates a complete disregard for the rights of the landowner and a lack of due diligence and prudence as an operator in his conduct on these premises. The court specifically finds that the oil and gas lease under which the defendant claims his rights has lapsed by the express language contained therein and finds that in order to assert rights under the lease during the secondary term, the defendant had to produce oil and/or gas. The defendant has failed to do this for a period of seventeen years. Second, the court finds that, based on the authority regarding implied covenants, this court is justified in entering an order forfeiting any interest of the defendant in the leasehold. Further, the court finally finds that the defendant has abandoned any interest in the subject premises and in the dilapidated equipment remaining thereon and vests title to such equipment in the plaintiff herein.

*Judgment accordingly.*