DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Joyce Manning, appeals from the decision of the Lorain County Court of Common Pleas, Domestic Relations Division, which granted appellee's motion for summary judgment, denied appellant's motion for summary judgment, and dismissed appellant's motion to show cause. This Court reverses.
 I. {¶ 2} Appellant and appellee, Dean Manning, were divorced by decree dated July 8, 1996. At the time of the divorce, appellee had the right to purchase up to 575 shares of Cincinnati Insurance Company stock at a price of $38.89 per share. The divorce decree provided that appellant had the right to purchase up to one-half of the 575 shares at the same price as purchased by appellee.
 {¶ 3} On April 4, 1998, the Cincinnati Insurance Company stock split three-for-one. As a result of the split, the per share price was reduced to $12.34 per share. However, the total value of the account at the time of the split did not change. The total value of the account was the same after the split although the number of shares changed.
 {¶ 4} At the time of the stock split, there were 494 shares of the original 575 shares identified in the divorce decree remaining. Appellee had exercised his option to purchase 81 shares prior to the stock split. Appellant forfeited her right to purchase 81 shares at that time. Thus, after the stock split, there were 1,482 shares remaining (494 × 3). On or about August 17, 1998, appellee exercised his option to purchase 112 shares of stock without notifying appellant. In a letter dated June 22, 1999, appellee notified appellant of his intent to purchase 206.5[1]
shares of stock. On July 12, 1999, appellant notified appellee that she intended to purchase 207 shares of stock.
 {¶ 5} In a letter dated July 15, 1999, appellee notified appellant that as far as he was concerned, she had exercised the options given to her in the divorce decree and that she would not hear from him again regarding this matter. Appellee subsequently exercised his option to purchase the remaining shares without notifying appellant and allowing her to exercise her options to purchase.
 {¶ 6} Appellant filed a motion in contempt alleging that appellee failed to notify her of his exercising the option to purchase shares of Cincinnati Insurance Company stock pursuant to the divorce decree dated July 8, 1996. Appellant subsequently withdrew her motion in contempt and filed a motion to show cause on March 22, 2003. In her motion to show cause, appellant asked that appellee be held in contempt of court for refusing her the right to purchase an equal number of stock options pursuant to the July 8, 1996 divorce decree.
 {¶ 7} Appellant filed a motion for summary judgment on March 26, 2004. Appellee filed a cross-motion for summary judgment on April 28, 2004. The trial court granted appellee's motion for summary judgment, denied appellant's motion for summary judgment, and dismissed appellant's motion to show cause.
 {¶ 8} Appellant timely appealed, setting forth two assignments of error for review.
 FIRST ASSIGNMENT OF ERROR
"The trial court erred in concluding that Plaintiff-Appellant was not entitled to purchase any further shares of stock and that Plaintiff-Appellant's shares were not subject to any stock split."
 {¶ 9} In her first assignment of error, appellant argues that the trial court erred in granting appellee's motion for summary judgment. This Court agrees.
 {¶ 10} Appellate courts review the grant of summary judgment de novo, applying the same standard used by the trial court.[2] Grafton v. OhioEdison Co. (1996), 77 Ohio St.3d 102, 105. Accordingly, an appellate court "review[s] the same evidentiary materials that were properly before the trial court at the time it ruled on the summary judgment motion."Am. Energy Serv. Inc. v. Lekan (1992), 75 Ohio App.3d 205, 208. Under Civ.R. 56(C), summary judgment is proper if:
"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327.
 {¶ 11} The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the nonmoving party's claims. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. Any doubt is to be resolved in favor of the nonmoving party. Viock v. Stowe-Woodward Co.
(1983), 13 Ohio App.3d 7, 12.
 {¶ 12} Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). Dresher, 75 Ohio St.3d at 293. Once this burden is satisfied, the nonmoving party bears the burden of offering specific facts to show a genuine issue for trial. Id. The nonmoving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. Henkle v. Henkle (1991), 75 Ohio App.3d 732, 735. Pursuant to Civ.R. 56(C), only certain evidence and stipulations, as set forth in that section, may be considered by the court when rendering summary judgment. Specifically, the court is only to consider "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact[.]" Civ.R.56(C).
 {¶ 13} In her motion for summary judgment, appellant argued that she was entitled to the benefit from the three-for-one split and that appellee should be held in contempt for failing to notify her of his intent to purchase 112 shares of stock on or about August 17, 1998, and the balance of his option after July 15, 1999. To support her motion for summary judgment, appellant attached a copy of the divorce decree which set forth her rights under appellee's stock option plan; portions of Cincinnati Financial Corporation's 1998 annual report evidencing the three-for-one split of Cincinnati Insurance Company's stock on April 4, 1998; a letter dated August 14, 1998, from appellee to The Cincinnati Insurance Companies in which he expresses his intent to purchase 112 shares of stock; a letter dated June 22, 1999, from appellee to appellant notifying her of his intent to purchase 207 shares of stock; a letter dated July 12, 1999, from appellant to appellee notifying him of her intent to purchase 207 shares of stock and her desire to purchase the remaining shares of stock when exercised pursuant to the three-for-one split; a letter dated July 15, 1999, from appellee to appellant notifying her that, as far as he was concerned, she had exercised her stock options given to her in the divorce decree and that he would not be contacting her again regarding the matter; a summary of stock options exercised by appellee from February 28, 1994, through October 25, 2000; and a portion of appellee's deposition.
 {¶ 14} In his motion opposing appellant's motion for summary judgment and his cross-motion for summary judgment, appellee argued that appellant was not entitled to the benefit of the three-for-one split, which occurred after the divorce decree was journalized. Appellee argued that the divorce decree awarded appellant a fixed and definite number of shares and that appellant had either exercised her option to purchase or waived enough shares to equal the 287.5 shares appellee argued appellant was entitled to pursuant to the divorce decree. To support his motion for summary judgment, appellee attached a copy of the parties' divorce decree; portions of his deposition; the letter dated June 22, 1999, that he wrote to appellant advising her of his intent to purchase 207 shares of stock; appellant's letter to him dated July 12, 1999, advising him of her intent to purchase 207 shares of stock; case law; and a portion of appellant's motion for summary judgment.
 {¶ 15} The divorce decree set forth the division of appellee's stock option plan as follows:
"IT IS FURTHER ORDERED that Defendant's stock option, which consists of the right to purchase up to 575 shares of Cincinnati Insurance Company stock at a price of $38.89 per share, be divided. Plaintiff shall have the right to purchase up to one-half of said 575 shares at the same price as purchased by Defendant. Upon Defendant [sic] exercising the option to purchase, Defendant shall notify Plaintiff forthwith of the number of shares to be purchased and the purchase price. Thereafter, Plaintiff shall have thirty (30) days to exercise her right to purchase no less [sic] than the same, equal number of shares.
"* * * In the event Plaintiff fails to exercise her right to purchase said shares within thirty (30) days, as described herein, Plaintiff is deemed to have waived her right to purchase said number of shares and her right to purchase 287.5 shares shall be reduced by that number."
 {¶ 16} In Block v. Block (Mar. 31, 1997), 10th Dist. No. 96APF10-1296, the appellee wife received 1000 shares of stock pursuant to a settlement agreement. Four days later, the stock split going from 1000 shares to 1500 shares. Appellant husband argued that his former wife was not entitled to the additional 500 shares that resulted from the split. The Tenth Appellate District held:
"In other words, the fifteen hundred shares of stock were worth approximately the same amount after the stock split as the one thousand shares were worth prior to the stock split. Counsel for both sides admitted that a stock split was unforeseen and that risk had been allocated to the receiving party as of the date of the agreement. Quite simply, had there been a decline in market value that had resulted in the drop of the per share value of those one thousand shares of the stock after the May 24, 1996 judgment entry, appellee certainly would have borne that burden. Likewise, had there been an increase in the fair market value of the shares of the stock, appellee would have received the benefit. We fail to see how the award to appellee by the trial judge of the additional shares of stock arising from the same initial quantity amounted to an abuse of discretion.
"Moreover, the intervening stock split, which occurred between the agreement to give appellee certain stock and the actual transfer of the stock, may not deny appellee the right to receive the value for which she bargained on May 24, 1996, regardless of what happened to the stock after that date. We find that in the Second Addendum the parties agreed to allocate stocks with a fair market value of $1,233,354, as of the date of the agreement. Among those stocks was the one thousand shares of Traveler's stock valued at $61,125 as of May 1, 1996. Appellee agreed to receive those one thousand shares of Traveler's stock as a part of her settlement. After the Traveler's stock split, the body of the asset changed in form, but not in substance. The new form was that of a fifteen hundred share "shell," but the substance was that appellee was to receive however many shares of Traveler's stock that it took when adjusted for the split."
 {¶ 17} Likewise, in Herder v. Herder (1972), 32 Ohio App.2d 75, 77, a separation agreement incorporated into the parties' divorce decree gave the wife one hundred eighty shares of stock that she could withdraw equally with her husband, similar to the situation in present case. After the judgment entry was journalized, the stock split two-for-one. Appellant husband argued that his former wife was only entitled to one hundred eighty shares after the split. In construing the agreed entry, the First Appellate District held:
"The clear meaning, reached by the application of long accepted principles, of the disputed proviso in the case at bar is that the wife was given the full and complete interest and title then possessed by the husband in 180 shares of stock. We are not here concerned with the nature of such interest or title, but whatever identity it had, the wife acquired it without limitation.
"Since we conclude that the wife got what the husband owned, it follows that she also took whatever might be derived by virtue of her ownership. In this instance, that is the benefit of a two for one stock split." Id.
 {¶ 18} In the case sub judice, the divorce decree declared that appellant was entitled to purchase up to one-half of the 575 shares of Cincinnati Insurance Company stock that appellee had the right to purchase at the time of the divorce. In other words, the divorce decree awarded appellant an option to purchase shares of stock worth a specific value. The underlying principle of property division is not necessarily to divide the physical property in half, but to divide the value of the physical property as equally and equitably as possible. When the stock split, the amount of shares changed, but appellant's option to purchase the designated value did not. Therefore, appellant was entitled to the benefit of the three-for-one split even though it occurred after the divorce decree was journalized. Block, supra; Herder,32 Ohio App.2d at 77. This Court finds that appellant met her burden under Dresher and that appellee failed to meet his reciprocal burden. Therefore, summary judgment was improperly granted in favor of appellee. Appellant's first assignment of error is sustained.
 SECOND ASSIGNMENT OF ERROR
"the trial court erred in failing to hold Defendant-Appellee in contempt for failing to notify Plaintiff-Appellant of stock option purchase pursuant to the divorce decreee order."
 {¶ 19} In her second assignment of error, appellant argues that the trial court erred in failing to hold appellee in contempt for his failure to notify her of his intent to exercise his option to purchase 112 shares on or about August 17, 1998, and his exercise of his remaining options subsequent to the letter he sent her on July 15, 1999. The trial court dismissed appellant's motion to show cause on the basis that appellant was not entitled to the purchase of the additional stock due to the split. Given this Court's resolution of appellant's first assignment of error, the matter is remanded to the trial court for a hearing on the issue of contempt.
 III. {¶ 20} Appellant's first assignment of error is sustained and her second assignment of error is remanded to the trial court. The decision of the Lorain County Court of Common Please, Domestic Relations Division, is reversed, and the cause remanded to the trial court for proceedings consistent with this opinion.
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellee.
Exceptions.
Slaby, P.J., Batchelder, J. concur.
[1] This number was rounded up to 207 shares since shares cannot be purchased in less than whole shares.
[2] This Court notes that appellee argues that the appropriate standard of review is whether the trial court abused its discretion. However, appellant did not appeal from the original division of marital property. Appellant filed a motion to show cause alleging that appellee failed to notify her of his exercising the option to purchase shares of Cincinnati Insurance Company stock pursuant to the divorce decree. Ultimately, both appellant and appellee filed motions for summary judgment, and the trial court granted appellee's motion and denied appellant's motion.