DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellants William Benjamin Trucking, Inc., Benjamin Benjamin Trucking, Inc., and Mark Benjamin Trucking, Inc., have appealed from the judgment of the Summit County Court of Common Pleas that granted summary judgment to Plaintiff-Appellees Owners Insurance Co. and Auto-Owners Insurance Co. This Court affirms.
 I {¶ 2} Relevant to the instant appeal but not subject to our review, the record reveals that Robet Rey ("Rey"), a former employee of Appellants', suffered a job related injury requiring the amputation of his leg. Rey was then terminated from his employment with Appellants. On June 25, 2002, Rey filed suit against Appellants wherein he claimed that Appellants had engaged in: 1) retaliatory discharge; 2) handicap discrimination; 3) violations of public policy; and 4) negligent or intentional infliction of emotional distress. The Rey litigation was ultimately settled, and Rey dismissed his complaint against Appellants with prejudice.
 {¶ 3} On June 19, 2003, Appellees filed a complaint against Appellants and Rey requesting a declaratory judgment that Appellees had no duty to defend or indemnify Appellants in the Rey litigation. Appellants answered the complaint, arguing that Appellees had a duty to defend and indemnify Appellants in the Rey litigation. Appellants also filed a counterclaim against Appellees wherein they argued that they were entitled to reimbursement of attorney's fees and costs associated with the defense and settlement of the Rey litigation. Appellees answered Appellants' counterclaim, denying all of the substantive claims. Rey also answered Appellants' complaint and filed a counterclaim against Appellees and a cross-claim against Appellants. Appellees answered Rey's counterclaim, and Appellants answered Rey's cross-claim.
 {¶ 4} On February 20, 2004, Appellees filed a motion for summary judgment on their June 19, 2003 complaint requesting declaratory judgment. Appellants and Rey each responded to the motion.
 {¶ 5} On June 8, 2004, Appellees dismissed all claims against Rey in the underlying litigation. Rey never dismissed his counterclaim against Appellees or his cross-claim against Appellants.
 {¶ 6} On August 23, 2004, the trial court granted Appellees summary judgment on their June 19, 2003 complaint requesting declaratory judgment. Appellants have timely appealed the trial court's decision, asserting two assignments of error.
 II Assignment of Error Number One
"The trial court erred in granting summary judgment to owners insurance company because the rey complaint triggered a duty to defend with respect to the primary policy issued to appellants."
 {¶ 7} In their first assignment of error, Appellants have argued that the trial court erred when it concluded that Appellees were not required to defend or indemnify Appellants in the Rey litigation. Specifically, Appellants have argued that Rey claimed that he suffered bodily injury as a result of Appellants' negligence, thus triggering Appellees' duty to indemnify and defend Appellants in the Rey litigation. We disagree.
 {¶ 8} Appellate courts review the grant of summary judgment de novo, applying the same standard used by the trial court. Grafton v. Ohio EdisonCo. (1996), 77 Ohio St.3d 102, 105. Accordingly, an appellate court "review[s] the same evidentiary materials that were properly before the trial court at the time it ruled on the summary judgment motion." Am.Energy Serv., Inc. v. Lekan (1992), 75 Ohio App.3d 205, 208. Pursuant to Civ.R. 56(C), summary judgment is proper if:
"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327.
 {¶ 9} The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating the absence of genuine issues of material fact as to the essential elements of the non-moving party's claims. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. Any doubt is to be resolved in favor of the non-moving party. Viock v. Stowe-WoodwardCo. (1983), 13 Ohio App.3d 7, 12, certiorari denied (1986),479 U.S. 948, 107 S.Ct. 433, 93 L.Ed.2d 383.
 {¶ 10} Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). Dresher, 75 Ohio St.3d at 293. Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. Id. The nonmoving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. Henkle v. Henkle (1991), 75 Ohio App.3d 732, 735.
 {¶ 11} Appellants first have argued that in Count IV of his complaint against Appellants, Rey alleged that as a result of Appellants' negligence, Rey suffered bodily injury. Therefore, their argument continues, coverage pursuant to the Commercial General Liability ("CGL") policy was triggered and Appellees had a duty to defend and indemnify Appellants in the Rey litigation. In response, Appellees have argued that in Count IV of his complaint against Appellants, Rey alleged that he suffered a physical injury resulting from Appellants' intentional torts of retaliatory discharge, handicap discrimination, and violations of public policy. As a result, their argument continues, coverage pursuant to the CGL was not triggered and Appellees had no duty to defend or indemnify Appellants in the Rey litigation.
 {¶ 12} Turning first to the language of the CGL, it states that Appellees "will pay those sums that the insured becomes legally obligated to pay as damages because of `bodily injury'" subject to the exclusions, terms and definitions of the policy. The CGL policy includes an Employment-Related Practices Exclusion endorsement ("ERP") which states that the policy does not insure bodily injury resulting from:
"(2) Termination of employment;
"(3) * * * defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or
"(4) Consequential `bodily injury' as a result of [(2) or (3)]."
 {¶ 13} It is well settled that insurance policies are contracts and that trial courts should employ the general rules of contract construction and interpretation when interpreting insurance contracts.Westfield Ins. Co. v. Galatis (2003), 100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 11. In such context, words and phrases should be given their ordinary meaning unless the contract includes manifestations from all parties to the contract to do otherwise. Gomolka v. State Auto. Mut. Ins. Co.
(1982), 70 Ohio St.2d 166, 167-168. With these rules of interpretation in mind, we examine the Rey complaint to determine if, based upon the terms and conditions of the CGL and its endorsements, it triggered Appellees' duty to defend or indemnify Appellants in the Rey litigation.
 {¶ 14} The record reveals that Rey's first amended complaint ("complaint") against Appellants, filed June 25, 2002, was captioned "Retaliatory Discharge," "Handicap Discrimination," "Violation of Public Policy," and "Intentional and Negligent Infliction of Emotional Distress." In the complaint, Rey alleged handicap discrimination in Count I, retaliatory discharge in Count II, and violations of public policy in Count III. Count IV is the allegation that is the subject of the instant appeal and states that:
"22. [Rey] reiterates all allegations of Paragraphs 1-21 as if fully re-written herein.
"23. [Appellants] owed [Rey] a duty to refrain from negligently or intentionally injurying [Rey].
"24. [Appellants] breached its duty to [Rey].
"25. [Appellants'] negligent or intentional actions as set forth above proximately caused injury to [Rey] in the form of embarrassment, mental anguish, loss of reputation, loss of self esteem, harm to [Rey's] relationship with his family and other emotional injury and caused physical injury in the form of adverse health effects."
 {¶ 15} Appellants have argued that Rey's use of the word "negligent" in paragraph 25 takes Count IV out of the realm of an intentional tort and into the realm of general negligence resulting in bodily injury, and that such an allegation is outside the strictures of the ERP endorsement. As a result, their argument continues, coverage pursuant to the CGL was triggered by the allegations in paragraph 25. Appellees have argued that because Count IV incorporated Counts I through III by reference, and each of Counts I through III was an intentional tort, the allegations of Count IV are expressly excluded from coverage pursuant to the terms of the ERP endorsement.
 {¶ 16} Appellants' argument that Count IV is a stand alone claim ignores the fact that paragraph 22 incorporated by reference the three prior claims of the complaint, all of which were intentional torts. Pursuant to the language of the complaint, the trial court, and subsequently this Court, cannot analyze Count IV in isolation of Counts I through III. Instead, we must analyze Count IV as relying, at least in part, upon the allegations set forth in Counts I through III. This straightforward reading of Rey's complaint, in light of items (2)-(4) of the ERP endorsement discussed above, leads us to conclude that paragraph 25 of his complaint did not trigger coverage pursuant to the CGL policy.
 {¶ 17} Appellants next have argued that Appellees had a duty to defend them against Rey's allegation of personal injury in the form of invasion of privacy, also alleged in Count IV of the complaint. In response, Appellees have argued that such claim is exempt from coverage pursuant to the ERP endorsement.
 {¶ 18} Pursuant to the "Personal and Advertising Injury Liability" section of the CGL policy, Appellee would pay "those sums that [Appellants] become legally obligated to pay as damages because of `personal injury[.]'" The policy defined "personal injury" as an injury, other than a "bodily injury," arising out of, among other things, the "[o]ral or written publication of material that violates a person's right of privacy."
 {¶ 19} Our review of Rey's first amended complaint reveals that nowhere in his complaint did he allege that Appellants invaded his privacy. Instead, in paragraph 27 of his complaint, Rey alleged that "[Appellants'] actions constitute an outrageous invasion of [Rey's] personal rights." The record is devoid of any indication that Rey amended his complaint to state which personal rights he felt were violated by Appellants, or to state an allegation that Appellants invaded his right to privacy. As a result, we conclude that paragraph 27 of Rey's complaint did not allege a personal injury as defined by the policy. It follows that paragraph 27 of the Rey complaint did not trigger coverage pursuant to the CGL policy.
 {¶ 20} Appellants next have argued, in the alternative, that assuming Rey was an employee of Appellants at the time he sustained his injury, "stop gap" coverage provided to Appellants by Appellees would have been triggered by Rey's allegation of physical injury contained in paragraph 27 of his complaint. Appellees have responded that Rey's complaint did not allege a physical injury that triggered Appellees' duty to defend and indemnify Appellants.
 {¶ 21} The "stop gap" endorsement of the CGL policy states that coverage is provided for damages resulting from the bodily injury of an employee in the course and scope of his employment. The exceptions to the "stop gap" endorsement state that coverage does not apply to "bodily injury to an employee * * * which is intentionally caused or aggravated by [the insured]."
 {¶ 22} Having already determined that Count IV of Rey's complaint alleged a physical injury and the invasion of unspecified personal rights resulting from the intentional torts alleged in Counts I through III of his complaint, it follows that Count IV falls within the exception to the "stop gap" endorsement of the policy. As a result, coverage pursuant to the "stop gap" endorsement was not triggered.
 {¶ 23} In sum, Rey alleged to have suffered a physical injury resulting from the intentional torts committed against him by Appellants. As a result, the ERP endorsement and the "stop gap" endorsement precluded coverage. Based on the foregoing, we conclude that reasonable minds could come to but one conclusion, namely that pursuant to the terms and conditions of the CGL policy and the relevant endorsements, none of the allegations in Count IV of the Rey complaint triggered Appellees' duty to defend or indemnify Appellants in the Rey litigation. The trial court did not err when it granted summary judgment to Appellees on their request for declaratory judgment stating the same.
 {¶ 24} Appellants' first assignment of error lacks merit.
 Assignment of Error Number Two
"The trial court erred in granting summary judgment to [appellees] because the rey complaint triggered a duty to defend with respect to the umbrella policy issued to appellants."
 {¶ 25} In their second assignment of error, Appellants have argued that the trial court erred when it granted summary judgment to Appellees. Specifically, Appellants have argued that Appellees had a duty to defend or indemnify them pursuant to the terms of an umbrella policy issued to Appellants by Appellees. We disagree.
 {¶ 26} As discussed, infra, this Court reviews a trial court's decision to grant summary judgment de novo. Grafton, at 105.
 {¶ 27} Appellants appear to have argued that the Rey complaint triggered coverage of the umbrella policy issued by Appellees to Appellants. In response, Appellees have argued that because the underlying CGL policy was not triggered by the Rey complaint, the umbrella policy could not be triggered by the Rey complaint and they had no duty to defend or indemnify Appellants in the Rey litigation.
 {¶ 28} In the instant matter, the record reveals that Appellees issued an umbrella policy to Appellants. On the declarations page of the umbrella policy, the CGL policy and the "stop gap" endorsement, among other things, were designated as the "underlying insurance" or primary coverage to the umbrella policy. Furthermore, the umbrella policy states that Appellees:
"[W]ill pay those sums included in the term ultimate net loss that the insured becomes legally obligated to pay as damages because of:
"A. Bodily injury;
"* * *
"to which this insurance applies caused by an incident."
The umbrella policy defines incident as:
"1. When coverage applies under both this policy and the scheduled underlying insurance, either;
"a. occurrence;
"b. offense; or
"c. claims-made; "whichever one of these is the basis of coverage under the scheduled underlying insurance."
 {¶ 29} Given our determination that the Appellants were not entitled to coverage pursuant to the terms of the CGL policy, it follows that Appellants failed to meet the definition of "incident" provided in the umbrella policy. Therefore, pursuant to the terms and conditions of the umbrella policy, none of the allegations in Count IV of the Rey complaint triggered Appellees' duty to defend or indemnify Appellants in the Rey litigation. The trial court did not err when it granted summary judgment to Appellees on their request for declaratory judgment stating the same.
 {¶ 30} Appellants' second assignment of error lacks merit.
 III
Appellants' two assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellants.
Exceptions.
Batchelder, J. Moore, J. Concur.