OPINION
{¶ 1} Defendant-appellant Petro Evaluation Services, Inc. appeals the March 16, 2004 Journal Entry of the Morrow County Court of Common Pleas.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Plaintiffs-appellees Robert and Karen Morrison own approximately 70 acres of land in Perry Township, Morrow County, Ohio.
 {¶ 3} On or about June 20, 1986, appellees, as lessors, executed and delivered to appellant Petro Evaluation Services, Inc., as lessee, an oil and gas lease covering the approximate 70 acres. The oil and gas lease, which was recorded on June 24, 1986, in Volume 128, page 672 of the Morrow County Records, stated, in relevant part, as follows:
 {¶ 4} "3. This lease shall remain in force for a primary term of one year(s) and as long thereafter as operations described above are beingconducted on the premises, or oil or gas is produced or is capable ofbeing produced from the premises. This lease shall continue in full force as long as there is a well or wells on the leased premises capable of producing oil or gas, but in the event all such wells are shut in and not producing for any reason beyond the reasonable control of Lessee for a continuous period of sixty days, then, thereafter, Lessee shall pay to Lessor a rental of One Hundred Dollars for each month following the end of said sixty day period during which all such wells are shut in, which payments may be made by Lessee monthly, or annually. . . .
 {¶ 5} "5. If operations for a well are not commenced on said land within one months of the date of this lease, this lease shall terminate as to both parties unless the Lessee or his assigns, on or before that date, shall pay or tender to Lessor or his successors or assigns, the sum of $1.00 + O.V.C. Paid up lease upon signing which shall operate as a rental and cover the privilege of deferring the commencement of a well for 12 months from said date. Lessee will pay said rentals annually. This lease shall not terminate for failure to pay rental for any period or for any part of the lease until and unless Lessor gives Lessee written notice by certified mail of the failure to pay such rental and said rental is not paid within ten days of the receipt of said notice by Lessee." (Emphasis added).
 {¶ 6} In June of 1987, a well was drilled on appellees' property at a cost of approximately $67,000 to $70,000. Because sour sulphur gas was coming out of the hole, rock and soil analysis samples were taken. The samples revealed the well produced sour gas, which has a high sulfur content and needs to be "scrubbed" to get rid of the hydrogen sulfide before it can be used for domestic purposes. Without scrubbing, the sour gas cannot be used for domestic purposes, but can only be sold to farmers or anyone else who dries corn. When the well was drilled in 1987, appellant did not have access to a scrubbing facility.
 {¶ 7} In June of 1988, appellant sent appellees a check in the amount of $1,200.00 to cover the shut-in rentals for the period September 15, 1987, to September 15, 1988. No further shut in rentals have been paid .
 {¶ 8} Thereafter, in 1991, the Ohio Department of Natural Resources contacted appellant in regard to plugging the well. In response, a separator and gas line were brought to the well site in order to convince the Ohio Department of Natural Resources the well should not be plugged and was capable of production. In a letter dated June 10, 1991, from appellant Petro Evaluation to the Ohio Oil and Gas Review Board, appellant indicated the well was "capable of producing oil and/or gas in commercial quantities" and "pipelineeight (sic) of ways are currently being negotiated." Transcript at 26.
 {¶ 9} On or about October 8, 1993, appellees signed an affidavit stating as follows:
 {¶ 10} "a. The well is capable of producing natural gas and oil in paying quantities.
 {¶ 11} "b. The loss of my 1/8 income from this well and the 500,000 cubic feet of free gas per year is unjustifiable.
 {¶ 12} "c. I am able to hook up my corn dryer and use this well for my own use.
 {¶ 13} "d. I know of no environmental problems on this well."
 {¶ 14} Appellee Robert Morrison testified the purpose of the affidavit was to ensure the Ohio Department of Natural Resources did not plug the well.
 {¶ 15} On or about December 2, 1999, appellee Robert Morrison sent a certified letter to appellant stating as follows: "Shut-in fees due from Sept. 15, 1988 through Sept. 15, 1999 now total $13,200 as spelled out in paragraph 3 of the oil and gas lease." However, appellees did not receive any shut-in royalties from appellant in response.
 {¶ 16} Thereafter, on September 25, 2000, appellees filed a complaint against appellant in the Morrow County Court of Common Pleas, alleging, in relevant part, as follows:
 {¶ 17} "3. Prior to July 15, 1987, a well capable of producing oil and/or gas was completed on the premises belonging to the plaintiffs pursuant to the provisions of said lease attached as Exhibit A hereto.
 {¶ 18} "4. As a result of circumstances beyond the reasonable control of Lessee such well was shut in and not producing on or after July 15, 1987.
 {¶ 19} "5. On or about June 13, 1988, defendant sent a letter to plaintiffs regarding the shut in royalty payments and paid to plaintiffs the sum of $1,200 to cover the shut in royalty payments for the period from September 15, 1987 through September 15, 1988. . . .
 {¶ 20} "6. Said well has remained shut in through the present time, but defendant has failed to make the payments due monthly or annually since September 15, 1988, to plaintiffs' damage in the amount of $14,400 through September 15, 2000, plus interest, and continuing at the rate of $100 per month after September 15, 2000."
 {¶ 21} On July 1, 2002, appellant filed a Motion for Summary Judgment, arguing that the well was neither a producing well nor a well capable of production and, therefore, the oil and gas lease was not valid and no shut in royalties were due under the same. Appellant, in its motion, further argued that the lease had expired by its own terms and, therefore, no shut in royalties were due.
 {¶ 22} After the trial court denied appellant's motion, the case proceeded to a bench trial. At trial, testimony was adduced that in July of 2002, appellant had installed a sales line to the pipeline which could be used to transport the gas to a scrubbing facility.
 {¶ 23} As memorialized in a Journal Entry filed March 16, 2004, the trial court found appellant owed appellees "a shut in rental, being the sum of $100 per month for each month since September 15, 1998, in the total amount of $18,700 as of March 15, 2002, plus interest at the rate of 10% per annum from the date of this Journal Entry." The trial court, therefore, granted judgment in favor of appellees and against appellant in such amount.
 {¶ 24} Appellant now raises the following assignments of error on appeal:
 {¶ 25} "I. THE TRIAL COURT ERRED IN ITS RULINGS AND IN ITS INTERPRETATION OF THE LEASE THAT THE LEASE DID NOT EXPIRE BY ITS OWN TERMS, IT WAS STILL VALID IN ITS SECONDARY TERM WHEN NO SHUT-IN ROYALTIES WERE PAID AND THE WELL WAS NOT PUT INTO ACTUAL PRODUCTION. AS SUCH, THE TRIAL COURT ERRED IN DENYING DEFENDANT/APPELLANT'S MOTION FOR SUMMARY JUDGMENT, DIRECTED VERDICT AND FINDING FOR THE PLAINTIFFS/APPELLEES IN ITS JUDGMENT ENTRY.
 {¶ 26} "II. THE TRIAL COURT ERRED IN RULING THAT THE WELL IS `CAPABLE OF PRODUCING' WHEN THE UNDISPUTED EVIDENCE PRESENTED AT TRIAL SHOWED THE WELL WAS ONLY CAPABLE OF PRODUCING `SOUR GAS'.
 {¶ 27} "III. THE TRIAL COURT ERRED IN RULING THAT THE DEFENDANT/APPELLANT IS ESTOPPED FROM CLAIMING THE LEASE EXPIRED SINCE THE PLAINTIFFS/APPELLEES FAILED TO PRESENT THE NECESSARY ELEMENTS OF ESTOPPEL AT TRIAL."
 I, II {¶ 28} Appellant, in its first assignment of error, argues the trial court erred in entering judgment in favor of appellees since the well was neither a producing well nor a well capable of production and, therefore, the lease was not valid and no shut-in royalties were due under the same. Appellant further argues the lease expired by its own terms and, therefore, no shut-in royalties were due under the lease. Appellant, in its second assignment of error, contends the trial court erred in holding the well was "capable of producing."
 {¶ 29} The general rule is contracts should be construed so as to give effect to the intention of the parties. Employers' Liab. Assur. Corp. v.Roehm (1919), 99 Ohio St. 343, 124 N.E. 223, syllabus. Thus, it is a fundamental principle in contract construction contracts should "be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language." Skivolocki v. E. Ohio Gas Co.
(1974), 38 Ohio St.2d 244, 313 N.E.2d 374, paragraph one of the syllabus. "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." Foster WheelerEnviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.,78 Ohio St.3d 353, 361, 1997-Ohio-202, 678 N.E.2d 519, citing Kelly v.Med. Life Ins. Co. (1987), 31 Ohio St.3d 130, 132, 509 N.E.2d 411.
 {¶ 30} During the course of the judicial examination of a contract, the reviewing court should give the language of the instrument its plain and ordinary meaning unless some other meaning is evidenced within the document. Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241,245, 374 N.E.2d 146. If the terms of the contract are determined to be clear and unambiguous, the interpretation of the language is a question of law reviewed de novo on appeal. State ex rel. Parsons v. Fleming,68 Ohio St.3d 509, 511, 1994-Ohio-172, 628 N.E.2d 1377. Under a de novo review, an appellate court may interpret the language of the contract substituting its interpretation for that of the trial court. See Grahamv. Drydock Coal Co. (1996), 76 Ohio St.3d 311, 313, 667 N.E.2d 949. Only in the event a term of a contract is determined to be ambiguous will the matter be labeled as a question of fact. Inland Refuse Transfer Co. v.Browning-Ferris Industries of Ohio, Inc. (1984), 15 Ohio St.3d 321, 322,474 N.E.2d 271.
 {¶ 31} With respect to oil and gas leases, the Supreme Court of Ohio, in the case of Harris v. Ohio Oil Co. (1897), 57 Ohio St. 118, 129,48 N.E. 502, stated as follows: "The rights and remedies of the parties to an oil or gas lease must be determined by the terms of the written instrument, and the law applicable to one form of lease may not be, and generally is not, applicable to another and different form. Such leases are contracts, and the terms of the contract with the law applicable to such terms must govern the rights and remedies of the parties." See alsoLake v. Ohio Fuel Gas Co. (1965), 2 Ohio App.2d 227, 231,207 N.E.2d 659.
 {¶ 32} As stated supra, paragraph three of the oil and gas lease in the case sub judice states as follows:
 {¶ 33} "3. This lease shall remain in force for a primary term of one year(s) and as long thereafter as operations described above are beingconducted on the premises, or oil or gas is produced or is capable ofbeing produced from the premises. This lease shall continue in full force as long as there is a well or wells on the leased premises capable of producing oil or gas, but in the event all such wells are shut in and not producing for any reason beyond the reasonable control of Lessee for a continuous period of sixty days, then, thereafter, Lessee shall pay to Lessor a rental of One Hundred Dollars for each month following the end of said sixty day period during which all such wells are shut in, which payments may be made by Lessee monthly, or annually. . . ." (Emphasis added.)
 {¶ 34} This clause, which is known as a habendum clause, has two parts. The first part, or the primary term, is of definite duration and is one year in this case. The second part is of indefinite duration and operates to extend the lease for "as long thereafter as operations described above are being conducted on the premises, or oil and gas isproduced or is capable of being produced from the premises." (Emphasis added). As noted by this Court in American Energy Services, Inc. v.Lekan (1992), 75 Ohio App.3d 205, 598 N.E.2d 1315, "[i]f after the expiration of the primary term the conditions of the secondary term are not continuing to be met, the lease terminates by the express terms of the contract herein and by operation of law and revests the leased estate in the lessor." Id. at 212, citing Gisinger v. Hart (1961),115 Ohio App. 115, 184 N.E.2d 240.
 {¶ 35} At issue in the case sub judice is how long the oil and gas lease remained in effect. As noted by appellant, the lease requires one of the following conditions be satisfied to keep the lease from expiring by its own terms (1) the production of oil or gas, or (2) the payment of shut-in royalties to extend the lease despite non-production. While appellant argues the well is neither producing or capable of producing gas and, therefore, the lease expired in September of 1988, in accordance with paragraph 3 since no shut-in royalties were paid after such date to extend the term of the lease, appellees argue the well was capable of producing sour gas and, therefore, was "capable of producing" and, therefore, the lease continued in full force and effect.
 {¶ 36} In Tisdale v. Walla (Dec. 23, 1994), Ashtabula App. No. 94-A-0008, 1994 WL 738744, the oil and gas leases stated, in the habendum clause, as follows: "2. TO HAVE AND TO HOLD said premises for the purposes aforesaid during the term of ten (10) years from the date hereof [called `primary term'], and as long thereafter as drilling operations for oil and gas are conducted thereon, hereunder, or oil or gas is produced therefrom hereunder, and — or so long as said premises are used for underground storage of gas as herein provided."
 {¶ 37} The Court, in Tisdale, in interpreting the term "produced" as used in such clause, held such term means "produced in paying quantities" and the gas produced for the parties' domestic use[1] did not serve to extend the term of the leases. In so holding, the court in Tisdale stated at page 3 as follows: "In Delta Gas Corp. v. Thompson (Dec. 3, 1991), C.A.6 No. 90-6486, a condition in the habendum clause similarly provided that the term would extend as long as oil was "produced" the court concluded:
 {¶ 38} "Defendants maintain that production did not cease if one considers the household use of gas by plaintiffs' son. However, it is not disputed that no gas was produced for sale. Production, as defined under the term of the lease, does not include production for household use by the lessors as the lease expressly provides for such use and no profit was generated by such production. See Cumberland Contacting Co. v.Coffey, 405 S.W.2d 553 [Ky. 1966] [production in profitable quantities is required, as the payment of a reasonable royalty is the object of leasing oil and gas rights]." Id. at Fn 2." See also, Lekan, supra, in which this Court held the term "produced" required "actual production" and potential for production was not enough. Id at. 213.
 {¶ 39} While, in this matter, the habendum clause contains somewhat different language than in Tisdale and requires the well be either "produced" or "capable of production", we find the same legal concept applies. We concur with appellant the term "produced" in a habendum clause means "produced in paying quantities", then the phrase "capable of production" means "capable of producing in paying quantities." Recently, the Texas Supreme Court reviewed a habendum clause in a gas lease that stated "[t]his lease shall remain in force for a term of one year and as long thereafter as gas is or can be produced." (Emphasis added.) The court held that "a well is capable of production if it is capable of producing in paying quantities without additional equipment or repairs."Anadarko Petroleum Corp. v. Thompson (2003), 94 S.W.3d 550, 558.
 {¶ 40} Thus, the issue becomes whether the well in this case was capable of producing in paying quantities. At the trial in this matter, testimony was adduced the well has never produced domestically usable gas and, at best, was only capable of producing "sour gas". Testimony also was adduced "sour gas" is not marketable, unless scrubbed, and appellant has not obtained a contract with a scrubbing facility. However, we find the evidence supports the trial court's conclusion the well was capable of producing gas [in paying quantities]. Even sour gas is marketable. The fact appellant did not have ready access to a scrubbing facility in 1987, does not necessarily mean access was not available or possible.
 {¶ 41} Appellant advised the Ohio Department of Natural Resources in 1991, the well was capable of production in commercial quantities and pipeline right of ways were being negotiated. In July 2002, appellant was on appellee's property installing a sales line to the pipeline which can transport the gas to a scrubbing facility. Appellant had discussed arrangements to have the gas scrubbed. If the well was capable of production in 1991, and in 2002, appellant was preparing to transport the sour gas for scrubbing, appellant has failed to demonstrate why it could not have made the well capable of production in 1988. Because the well was capable of production, the lease did not terminate in September, 1988, and appellees were entitled to the shut-in royalties after such time.
 {¶ 42} Appellant's first and second assignments of error are overruled.
 III {¶ 43} Appellant, in its third assignment of error, argues the trial court erred in ruling appellant is estopped from claiming the lease expired in September of 1988. We disagree.
 {¶ 44} The trial court, in its Journal Entry, held, in relevant part, as follows:
 {¶ 45} "9. The Defendant's actions, since the commencement of this case of installing a sales line, show an intention to treat the Lease as being in full force and effect, which intention creates an attendant duty on the part of the Defendant to perform its duties under the contract, including the duty to pay accrued shut in rentals.
 {¶ 46} "10. The Defendant is estopped from claiming that the leasehold terminated prior to July, 2002, since by its own actions, from the commencement of this action, it installed a sales line on the Plaintiffs' property."
 {¶ 47} This Court, in Stitzlein v. Willey (Dec. 12, 1979), Holmes App. No. CA-318, 1979 WL 209691, held that "R.C. 5301.01 precludes the concept that a [oil and gas] lease may be "reborn by estoppel"." Id. at 3. In that case, the appellee contended certain statements evidenced an intent to retain an oil and gas lease in full force and effect past its expiration time. This Court noted "[t]he lease had already expired at the time of the alleged statements, and the verbal statement would be ineffective to either revive the lease, or to create a new lease. See R.C. 5301.01." Id. at 3.
 {¶ 48} Having found in our analysis of appellant's first and second assignments of error the lease did not expire in 1998, because it was "capable of producing", the concept of "reborn by estoppel" we discussed in Stitzlein is inapplicable here. We find the trial court properly found appellant was estopped from claiming the lease terminated prior to July, 2002.
 {¶ 49} Appellant's third assignment of error is overruled.
 {¶ 50} The judgment of the Morrow County Court of Common Pleas is affirmed.
Hoffman, P.J., Wise, J. concurs, Edwards, J., dissents.
[1] The parties took free gas from the well to use for domestic purposes and to use in a pig farming operation.