OPINION
{¶ 1} Appellants, Jeffrey and Nancy Wuenschel, appeal from the Ashtabula County Court of Common Pleas judgment that dismissed their complaint for declaratory judgment, ejectment, trespass, money damages, and injunctive relief against appellees, Robert Barr, dba Big Sky Petroleum, and Northwood Energy Corp., after a one-day bench trial that centered around the Wuenschels' right to declare a forfeiture of a lease for two oil and gas wells located on their property. *Page 2 
 {¶ 2} The Wuenschels attempted, pursuant to the statutory procedure of R.C. 5301.322, to declare forfeiture alleging that the wells were not productive and that they were not receiving royalty payments.
 {¶ 3} We agree with the trial court that the subject wells were in continuous production at all times for either gas or oil, and, further that all royalties were duly paid. Therefore, we agree the lease of the oil and gas rights is not subject to forfeiture pursuant to R.C. 5301.322.
 {¶ 4} We affirm the trial court's judgment as set forth in its entry and upon the additional grounds that the Wuenschels did not properly follow the terms of the lease contract before filing for forfeiture, ignoring their duty to provide a ninety-day notice of default before taking action pursuant to R.C. 5301.322.
 {¶ 5} Procedural and Substantive History
 {¶ 6} This case centers around two oil and gas wells, "Cusano I" and "Cusano II," that are located on the Wuenschels' 120-acre property located in Sheffield Township. The Wuenschels purchased the property in 1995 from Florence Cusano.
 {¶ 7} The two Cuasano wells were originally leased to Northeastern Operating Company, Inc. on December 20, 1981, for the oil and gas of the two wells. Northeastern Operating sold the lease to Northwood in 1990, the assignment of which was duly recorded on April 23, 1990, in the Ashtabula County Recorder's Office. Northwood then sold the lease to Robert W. Barr, sole owner of Big Sky Petroleum, for $10,000 in 2001. The assignment, however, was not recorded in the Ashtabula County Recorder's Office until Northwood informed Mr. Barr that it had received a notice of forfeiture from the Wuenschels on February 22, 2005. The assignment in 2001 was *Page 3 
apparently not recorded due to the error of either Mr. Barr's or Northwood's secretary. The assignment for the pipeline rights of way, however, was duly recorded on September 5, 2001. The assignment was also properly recorded with Ohio Department of Natural Resources ("ODNR") in 2001. ODNR's records reflect that Mr. Barr posted the requisite bond and insurance required to maintain the producing wells, and that the wells were in actual production when the lease was assigned.
 {¶ 8} Pertinent to this appeal, the lease provides in clause two, which is the habendum clause, that the lease "shall remain in force for a primary term of three months from this date and as long thereafter as operations for oil or gas are being conducted on the premises, or oil or gas is found in paying quantities thereon, ****."
 {¶ 9} Most notably, the lease further provides in clause five: "* * * and no default shall be declared against the Lessee by the Lessor for failure of the Lessee to make any payment or perform any conditions provided for herein unless the Lessee shall refuse or neglect to pay or perform the same for ninety days after having received written notice by registered mail from the Lessor his intention to declare such default."
 {¶ 10} The lease also provides at clause eleven that "[n]o change of ownership in the land or in the rental or royalties shall be binding on the Lessee until after notice to the Lessee and it has been furnished with a written transfer or assignment or a certified copy thereof."
 {¶ 11} The Wuenschels filed a complaint for Declaratory Judgment, Ejectment, Trespass, Money Damages, and Injunctive relief against Northwood, Big Sky Inc., and Robert Barr, as the owner of Big Sky, in 2005 for nonproduction of the wells and nonpayment of royalties. The Wuenschels alleged that they did not receive royalty *Page 4 
payments as per the lease from December 1999 until February of 2005, and that they were entitled to declare forfeiture pursuant to R.C. 5301.322. The Wuenschels filed their notice of forfeiture solely against Northwood on February 14, 2005. Pursuant to the statute and upon receiving no response from Northwood, they filed an affidavit of forfeiture thirty days after Northwood's receipt of the notice on March 29, 2005. The Wuenschels then refiled their affidavit on April 21, 2005.
 {¶ 12} After attempts at mediation failed, the case proceeded to a one-day bench trial on February 14, 2008. The exhibits and testimony demonstrate that the wells were in continuous production except for certain periods of time when the production of gas was halted for repairs to corroded and leaky pipelines that were connected to the wells.
 {¶ 13} Events Leading Up to the Forfeiture Filing
 {¶ 14} In late 1999, Northwood told the Wuenschels that while the wells were fully operational, the pipes transmitting the gas from the wells were leaky and corroding. They advised them to directly connect a line from their home to Cusano II, which they did indeed do, because Northwood was going to stop the production of gas until the pipes were repaired.
 {¶ 15} Mr. Wuenschel testified that royalty checks were received in February of 2000 for production in 1999, but that the royalty was from oil sold that was collected from the brine tank. The Wuenschels also received a check in 2000 for the sale of fifty barrels of oil produced in 2000. Thus, the Wuenschels did receive royalty payments in both 1999 and 2000 from Northwood. Northwood's check register reflects that the Wuenschels received and cashed royalty checks beginning on August 31, 1996, and *Page 5 
that the last check issued while Northwood was the lessee was cashed by the Wuenschels on August 14, 2000.
 {¶ 16} Evidence of Wuenschels' Notice of Assignment
 {¶ 17} Mr. Wuenschel testified that in 2003 his neighbor alerted him to an oil spill. At that time he researched the Ashtabula County Recorder's records in order to determine who was the present lessee. As the assignment dated May 1, 2002, was not recorded, the records reflected that Northwood was still the lessee of record, but the records also revealed that Mr. Barr was the lessee of the pipeline rights of way. Mr. Wuenschel, however, did not contact either party or take any further action regarding the oil spill.
 {¶ 18} Several years later, on February 25, 2004, Northwood sent the Wuenschels a check for $41.17, which represented back royalty that was owed to them from 1995. Northwood discovered the error when they were balancing their accounting books. Mr. Wuenschel returned the check, with a letter on March 18, 2004, informing Northwood that they were in default of the lease "when you supposedly sold the leases to Big Sky Energy, i.e. [sic] Mr. Barr. We have no interest in reinstating the lease, hence the return of your check. Northwood responded in kind on March 23, 2004, writing that "You are exactly right the wells have been sold to Big Sky Energy," and then further explained that the check was back revenue owed from 1995. The Wuenschels then accepted and cashed the check.
 {¶ 19} One year later, on February 14, 2005, the Wuenschels filed a notice of forfeiture pursuant to R.C. 5301.332 only against Northwood, even though they had actual notice that Mr. Barr was the current lessee of the well. The parties stipulated that *Page 6 
before this notice of forfeiture, the Wuenschels did not provide a notice of default as per the lease contract to either Northwood or Mr. Barr for failure of production or failure to make royalty payments. Mr. Wuenschel also testified that he understood the lease contract provided that before he could declare default, he was required to give ninety-day notice to the lessee. He further testified that he never provided to either Northwood or Mr. Barr such notice of default by certified mail of his intent to claim forfeiture.
 {¶ 20} Upon the assignment in 2001, Mr. Barr, at a cost of over $20,000, replaced the leaky pipes. Shortly after the assignment, Mr. Barr's son, Robert Barr, Jr., went to the Wuenschels' property, along with several others to perform the repairs. He actually spoke directly to the Wuenschels. Mr. Barr Jr. testified that he and his co-workers identified themselves to the owners, and that he gave Mr. Wuenschel his business card explaining that they had purchased the wells and were replacing the pipes. The Wuenschels initially questioned Mr. Barr's right to the wells, and they then had a discussion about the Wuenschels directly tapping into the service line. Mr. Barr Jr. and the Wuenschels talked "three or four times in the whole process," and Mr. Barr Jr. opined that the Wuenschels "seemed all right with it."
 {¶ 21} Royalty Checks
 {¶ 22} All of the paperwork Mr. Barr received from Northwood listed the Cusanos as the lessors. In fact, for a time Northwood sent royalties to Ms. Cusano after the Wuenschels purchased the property, and Ms. Cusano would cash the royalty checks for them and give them the cash. There was no evidence presented of compliance by the Cusanos or the Wuenschels with clause eleven of the lease which required written notice of a change in ownership in the land to be provided to the lessee. It appears, *Page 7 
however, that the Wuenschels contacted Northwood in some fashion in 1996 and as a result the checks were thereafter sent directly to the Wuenschels.
 {¶ 23} Mr. Barr attempted to send a royalty payment to Ms. Cusano in 2001, but the check was returned as "undeliverable." Mr. Barr placed the undeliverable royalty check, which he kept with the subsequent royalties that were due on the wells, in a suspension account. Mr. Barr testified that while it was standard accounting practice in the industry to hold unclaimed royalties in a suspension account, this was actually a rare case because the royalties were held for such a long period of time. In his experience, the landowner typically contacts the lessee immediately upon nonpayment, whereas, in this case, the Wuenschels waited for more than five years to contact anyone regarding the missing royalties.
 {¶ 24} On receiving the notice of forfeiture in February 2005, Northwood contacted Mr. Barr to tell them they had improperly received a notice of forfeiture from the Wuenschels. It was then that Mr. Barr discovered the assignment had not been recorded. Mr. Barr properly recorded the assignment in the Ashtabula County Recorder's Office on April 28, 2005.
 {¶ 25} Mr. Barr also immediately sent the Wuenschels a check for $3,113.27, eight days after the Wuenschels filed their notice of forfeiture against Northwood. This amount represented the full amount of suspended royalties owed since Mr. Barr assumed the lease in 2001. Mr. Wuenschel testified that since Mr. Barr learned in February of 2005 that the Wuenschels were the proper lessors, they have been receiving timely royalty payments ever since.
 {¶ 26} Production from the Wells *Page 8 
 {¶ 27} As for the actual operation of the wells, both wells were in constant production or at the very least, in operation since the inception of the lease. Mr. Barr's records reflect that there was production of gas for both Cusano I and Cusano II in 2001 except for the month of December. Production was further halted in 2002 in January and February, and then later in June and July. Mr. Barr testified that this was due to repair of the pipelines. In 2003, both wells were in production for the entire year. Production was down for one month in February of 2004, again due to repairs. The records continue until February of 2005, which was when the notice of forfeiture was filed against Northwood. Those records reflect that the wells were producing gas in both January and February of 2005.
 {¶ 28} The trial court found the wells were producing, except for periods of repairs due to the leaking pipelines; that Mr. Barr attempted to send a royalty check in 2001, which was returned as undeliverable; and that the Wuenschels received the benefit of production of gas from Cusano II, as it provided gas for their residence.
 {¶ 29} Ultimately, the trial court dismissed all of the Wuenschels' claims, specifically finding that the Wuenschels were not entitled to declare a forfeiture pursuant to R.C. 5301.322 based on nonproduction and nonpayment. The court further found the Wuenschels' claim of forfeiture due to Mr. Barr's or Northwood's failure to respond to their notice "somewhat ingenious" as they were at least aware, one year prior, from Northwood's letter of March 24, 2004, that the wells had been sold to Mr. Barr. Further, within a few days of being notified by Northwood that the Wuenschels had filed a notice of forfeiture, Mr. Barr immediately sent the Wuenschels a check for the past due royalties owed. The trial court found that Mr. Barr's response was well within the sixty-day *Page 9 
requirement of R.C. 5301.322 as it was sent a mere eight days after the notice of forfeiture was filed.
 {¶ 30} Thus, the trial court concluded that the wells were in continuous production, except for a period of time when Cusano I was out of production, and that the Wuenschels had adequate notice that the lease had been assigned from Northwood to Mr. Barr despite the lack of recording of the assignment. The court vacated the forfeiture and dismissed the Wuenschels' complaint.
 {¶ 31} The Wuenschels now timely appeal, raising two assignments of error:
 {¶ 32} "[1.] The Trial Court erred in not forfeiting the Cusano Lease.
 {¶ 33} "[2.] The Trial Court erred in failing to find that the oil and gas lease expired by its terms."
 {¶ 34} Rule of Construction and Standard of Review
 {¶ 35} Before we even reach the issue of statutory forfeiture, dismissal should have been granted based on the Wuenschels' failure to declare a default pursuant to the unambiguous lease provision to allow the parties either to remedy the situation, or after the requisite ninety-day notice and non-action of the lessee, pursue forfeiture per the statutory procedure of R.C. 5301.332.
 {¶ 36} "The general rule is contracts should be construed so as to give effect to the intention of the parties. Employers' Liab. Assur.Corp. v. Roehm (1919), 99 Ohio St.343, syllabus. Thus, it is a fundamental principle in contract construction that contracts should `be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language.' Skivolovki v. E. Ohio GasCo. (1974), 38 Ohio St.2d 244, paragraph one of the syllabus. `The intent of the parties to a contract is *Page 10 
presumed to reside in the language they chose to employ in the agreement.' Foster Wheeler Enviresponse, Inc. v. Franklin Cty.Convention Facilities Auth., 78 Ohio St.3d 353, 361, citing Kelly v.Med. Life Ins. Co. (1987), 31 Ohio St.3d 130, 132." Morrison v. PetroEvaluation Services, Inc., 5th Dist. No. 2004 CA 0004, 2005-Ohio-5640, ¶ 29.
 {¶ 37} "During the course of the judicial examination of a contract, the reviewing court should give the language of the instrument its plain and ordinary meaning unless some other meaning is evidenced within the document. Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241,245. If the terms of the contract are determined to be clear and unambiguous, the interpretation of the language is a question of law reviewed de novo on appeal. State ex rel. Parsons v. Fleming,68 Ohio St.3d 509, 511. Under a de novo review, an appellate court may interpret the language of the contract substituting its interpretation for that of the trial court. See Graham v. Drydock Coal Co. (1996),76 Ohio St.3d 311, 313. Only if a term of the contract is determined to be ambiguous will the matter be labeled as a question of fact. Inland Refuse TransferCo. v. Browning-Ferris Industries of Ohio, Inc. (1984),15 Ohio St.3d 321, 322." Id. at ¶ 30.
 {¶ 38} In Harris v. Ohio Oil Co. (1897), 57 Ohio St.118, the Supreme Court of Ohio further stated that "[t]he rights and remedies of the parties to an oil or gas lease must be determined by the terms of the written instrument, and the law applicable to one form of lease may not be, and generally is not, applicable to another and different form. Such leases are contracts, and the terms of the contract with the law applicable to such terms must govern the rights and remedies of the parties." Id. at 129.
 {¶ 39} In this case, the lease unambiguously provides in clause five that the lessor shall not declare default for failure to make any payment or perform any condition *Page 11 
unless the lessee shall refuse or neglect to pay or perform "for ninetydays after having received written notice by registered mail from theLessor of his intention to declare such default."
 {¶ 40} Mr. Wuenschel testified, and the parties also entered into a joint stipulation attesting to the fact that prior to the February 14, 2005 notice of forfeiture against Northwood, the Wuenschels had not provided notice to either Northwood or Mr. Barr for failure of production or failure to make payments.
 {¶ 41} Thus, Mr. Wuenschel admitted in his own testimony and in a joint stipulation that they did not follow the terms of the lease in declaring default, which was required before pursuing a forfeiture pursuant to R.C. 5301.332.
 {¶ 42} Therefore, the trial court should have dismissed the Wuenschels' claims based on these grounds as well.
 {¶ 43} We will now address the Wuenschels' arguments, which concern whether forfeiture was proper pursuant to R.C. 5301.332.
 {¶ 44} Forfeiture of the Lease due to Non-Production andNon-Payment
 {¶ 45} In their first assignment of error, the Wuenschels argue that the trial court erred in failing to declare a forfeiture of a lease because there was no production from 1999 to 2001 and further, that they did not receive any royalty payments from December 1999 to February 2005. We agree with the trial court and find this argument to be without merit, as we determine that there was continuous production, except for a period of time where production of gas was halted for repairs of the leaky pipes, and further, that the error was immediately rectified when Mr. Barr learned of the notice of forfeiture. Mr. Barr responded well within the sixty day time period mandated by *Page 12 
R.C. 5301.332. In fact, the back royalties were sent eight days after the notice of forfeiture was inaccurately sent to Northwood by the Wuenschels even though the Wuenschels had actual notice that Mr. Barr was the actual lessee of the wells.
 {¶ 46} It is axiomatic that the law abhors forfeiture. In the Matterof: Hamm (Apr. 30, 2002), 11th Dist. Nos. 2001-G-2363 and 2001-G-2366, 2002 Ohio App. LEXIS 2083, 12.
 {¶ 47} Further, "[i]n Inno v. Glen-Gery Corp. (1983),2 Ohio St.3d 131, the court discussed the right of a party to maintain an action in forcible entry and detainer, stating that: `**** [I]nasmuch as forfeiture is an equitable remedy, a strong showing of a violation of a clear right is required before a court will resort to such an extreme measure.'" Rosenbaum v. Dixie Energy Co. (July 31, 1987), 11th Dist. No. 11-274, 1987 Ohio App. LEXIS 8122, 3.
 {¶ 48} Evidence of Production and Operation
 {¶ 49} In 1999, Northwood approached the Wuenschels and told them that the gas pipe lines leading from the wells were faulty, and that the Wuenschels should directly tie into a pipeline to Cusano II. During this time the wells were not producing gas, but they were producing oil. Thus, during these periods of "nonproduction of gas," the wells were still producing oil and "operating" as per the terms of the lease in clause two, which states that the lease shall remain in force as long as "* * * operations for oil or gas are being conducted on the premises, or oil or gas is found in paying quantities thereon * * *."
 {¶ 50} The lease unambiguously provides that it shall remain in effect not only so long as there is production in paying quantities, but also for operation of the wells *Page 13 
themselves for either gas or oil. There is no question that the wells were operating and that there has been "paying quantities" of oil or gas at all times. The times there was no production of gas, the Wuenschels were still receiving royalty payments, albeit not for the production of gas, but for the production of oil, in 1999 and 2000.
 {¶ 51} The times the wells were not producing gas consisted of two or three different periods of approximately two to three months at a time, and this was due to various repairs to the leaky pipeline system. Once Mr. Barr was assigned the lease, he made the necessary repairs, installing about two and half miles of pipe, and the wells have been in production for gas ever since.
 {¶ 52} Thus, we agree with the trial court that the wells were in continuous production and that gas production was stopped only for repairs to the leaking pipelines. Further, as we address in more detail in the second assignment of error, at no time were the wells "shut-in" for nonproduction as would have been required by the state of Ohio of a nonproducing well because the problem was not with the wells themselves, but rather, with the leaky pipelines, which were fixed when Mr. Barr assumed ownership in 2001. Thus, while the wells were not producing gas in 2000, they were not "shut-in" for the purpose of closing the wells and stopping production, but rather production of gas was halted for reasonable repairs, and the valves leading to the pipes were simply turned off. During that time period, oil was being produced in "paying quantities."
 {¶ 53} Payment of Royalties
 {¶ 54} Second, as to the issue of nonpayment, the records reflect that the Wuenschels received royalty payments until August of 1999 for the production of gas and that these royalties were not sent on a consistent, monthly basis as is the standard *Page 14 
practice, thus it was not unusual that no check was received for the production of gas in December 1999. The Wuenschels also assert that they received no royalties from Northwood in 2000, but the records reflect that they received a check for the production of fifty barrels of oil that were produced from Cusano I in 2000, and a check for oil produced in 1999. Furthermore, the ODNR records state that there was nonproduction in 1998 and 2000 for Cusano II and nonproduction for Cusano I in 2000, but at no time did the state require the wells to be "shut-in," which would have indicated nonproduction and that the wells were inoperable.
 {¶ 55} Moreover, the Wuenschels have suffered no damages from nonpayment, and indeed they cite to no specific amounts of royalties they are owed for specific periods of time. The records reflect that Northwood paid them royalty checks until August of 1999, and the Wuenschels argue only that they did not receive payments from Northwood from the period of December 1999 and the year of 2000. While they did not receive a payment for royalties for the production of gas, they did receive a payment in 2000 for the production of oil. It is unclear, and the Wuenschels failed to specify, what royalty payments they are otherwise owed under the lease contract and for what.
 {¶ 56} It is true that the Wuenschels did not receive any payments from Mr. Barr from 2001 until 2005. It is also true that they failed to contact Mr. Barr or Northwood to inquire about the status of productions and/or payment until they filed a notice of forfeiture in 2005 declaring nonproduction and nonpayment. The evidence reflects that Mr. Barr attempted payment in 2001 to Ms. Cusano, that the check was returned undeliverable, and that it and the subsequent royalty payments due were held in a *Page 15 
suspense account until Mr. Barr identified the proper landowners. Eight days after the Wuenschels filed their notice of forfeiture against Northwood, Mr. Barr sent them all past due payments, and the parties are in agreement that the royalty checks have been timely sent ever since.
 {¶ 57} Equitable Consideration Regarding Notice and Laches
 {¶ 58} The Wuenschels argue that they properly followed the procedure to declare a forfeiture pursuant to R.C. 5301.332, and that it was Mr. Barr and Northwood who failed to follow through with the necessary paperwork to preserve their rights. Mr. Barr, however, paid the royalties owed well within the sixty-day time requirement of R.C. 5301.332.
 {¶ 59} "`Equity abhors a forfeiture and will only decree it when such relief is clearly required' ****." Swineford v. Schuster (June 5, 1990), 5th Dist. No. CA-954, 1990 Ohio App. LEXIS 2335, 13. Thus, "[e]quity requires a balancing of all the circumstances" when reviewing contracts affecting real estate. Id. at 14.
 {¶ 60} We agree with the trial court that the Wuenschels' claims are "ingenious" (and we would add "disingenuous" as well) because the record is replete with evidence that the Wuenschels had actual notice that Mr. Barr was the successor lessor of the wells as early as 2001, notwithstanding the failure to record the assignment of the lease until 2005. First, the assignment of the pipelines rights of way was properly recorded in 2001, which Mr. Wuenschel discovered in 2003 when his neighbor complained about an oil spill. Mr. Wuenschel also spoke with Mr. Barr, Jr. soon after Mr. Barr became the lessee when Mr. Barr Jr. and a crew came on the property to replace the pipes in 2001. In fact, Mr. Barr Jr. at that time actually gave Mr. Wuenschel his business card. *Page 16 
 {¶ 61} The most striking piece of evidence proving Mr. Wuenschel was well aware that Mr. Barr was the successor lessee is the letter he wrote to Northwood in March of 2004. In that letter, Mr. Wuenschel stated that Northwood "supposedly sold the lease to Big Sky Energy, i.e. [sic] Mr. Barr." To which Northwood replied in a letter six days later, "You are exactly right the wells have been sold to Big Sky Energy."
 {¶ 62} Putting aside the issue of notice to the proper party, the Wuenschels provided no notice of default as per the terms of the lease. Instead they took no action, waited one year, and then elected to issue a notice of forfeiture directed solely to Northwood in February of 2005, even though they were on notice of the assignment to Mr. Barr.
 {¶ 63} Upon immediate notice of the forfeiture, Mr. Barr rectified the situation, immediately sending payment as required by R.C. 5301.332, and properly recorded the original transfer of ownership in the Ashtabula County Recorder's Office.
 {¶ 64} The Wuenschels' argument that they followed the proper statutory procedure would be correct only if they had first sent a ninety-day notice of default to Mr. Barr, and then filed the notice of forfeiture pursuant to R.C. 5301.332 if he took no action after the requisite time period.
 {¶ 65} Mr. Barr raised the affirmative defense of laches in his answer, which is certainly applicable in this case. "Laches has been defined as `unreasonable delay; neglect to do a thing or to seek to enforce a right at a proper time * * *. The neglect to do what in law should have been done, for an unreasonable and unexplained length of time, and under circumstances permitting diligence.'" Genchur v.Chopko (Sept. 20, 1991), 11th Dist. No. 90-T-4395, 1991 Ohio App. LEXIS 4424, 12. *Page 17 
 {¶ 66} Further, the Wuenschels allege they have been damaged in the amount of $25,000 although they do not specify exactly what payments are missing, and it appears from the record that they were paid all royalties owed.
 {¶ 67} In summary, we agree with the trial court that the only time of nonproduction of gas from the wells was when necessary improvements in the gas transmission line were made in order to prevent lost production, and that the wells are not subject to forfeiture pursuant to R.C. 5301.332 as there is no evidence of nonproduction or nonpayment.
 {¶ 68} The Wuenschels' first assignment of error is without merit.
 {¶ 69} Lease Expiration by Its Own Terms
 {¶ 70} In their second assignment of error, the Wuenschels contend that the trial court erred in failing to find that the oil and gas lease expired by its own terms. Specifically, the Wuenschels argue that the trial court did not explicitly rule on this claim, although it was an issue at the bench trial; that the trial court further erred in holding that residential consumption constituted production under the lease; and finally, that the failure to pay shut-in royalties during the shut-in period caused the lease to terminate by its own terms. We find these arguments to be wholly without merit.
 {¶ 71} The first issue the Wuenschels raise is that the trial court never explicitly ruled on whether the lease expired on its own terms due to nonproduction. We fail to see how this argument has any merit as implicit in the court's judgment that forfeiture was improper is a determination that the lease did not expire. The trial court correctly found there was continuous production except for a period of time where production of *Page 18 
gas was halted due to repairs of the pipeline; thus, it is obvious that the lease had not terminated.
 {¶ 72} As Mr. Barr correctly notes, that pursuant to Civ. R. 52 "[w]hen questions of fact are tried by the court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise before the entry of judgment pursuant to Civ. R. 58, or not later than seven days after the party filing the request has been given notice of the court's announcement of its decision, whichever is later, in which case, the court shall state in writing the conclusions of fact found separately from the conclusions of law."
 {¶ 73} No such request was made by the Wuenschels and implicit in finding that the wells are not subject to forfeiture pursuant to R.C. 5301.332 is the finding that the lease did not expire by its own terms.
 {¶ 74} "Operations for Oil and Gas" and "Paying Quantities" ofSame
 {¶ 75} Secondly, the Wuenschels argue that the trial court erred in holding that residential consumption constituted production under the lease. The Wuenschels argue that "production" does not constitute household production pursuant to our previous holding in Tisdale v.Walla, 11th Dist. No. 94-A-0008, 1994 Ohio App. LEXIS 5941, in which we found the gas lease had expired by its own terms due to nonproduction. Thus, we held that the term "produced" "means "produced in paying quantities," and thus domestic use did not constitute production as per the terms of that lease. Id. at 7. See, also, Morrison at ¶ 38. But the lease in this case, however, is different from the lease inTisdale, and thus is factually distinguishable, and while the trial court did remark "the wells in question were producing, Cusano 2 provided gas for the Plaintiffs' residence *Page 19 
commencing sometime in 1999 * * *," this remark was obiter dicta as the linchpin in this case is the precise language employed in the habendum clause of the lease.
 {¶ 76} The habendum clause in the instant lease, clause two, is drafted differently, providing that the lease continues on its terms: "* * * as operations for oil or gas are being conducted on the premises, or oil and gas is found in paying quantities thereon."
 {¶ 77} There is no doubt that "operations" were continuous on both wells since the inception of the lease until the present. Although the Wuenschels did not receive any royalties from Northwood for the production of gas in 2000, they did receive royalties for oil that were produced from that year. Moreover, although no gas was being produced at the time because of the leaky pipes, at no time were the wells "shut-in," thus requiring shut-in royalties to be made to the Wuenschels. The records of the ODNR verify this fact.
 {¶ 78} There is also no question that the oil or gas in paying quantities was found from the Cusano wells and that it was "marketable." The problem here was that the gas could not be produced at certain points in time solely because of the faulty pipelines. In theMorrison case, the court, relying on our ruling in Tisdale, held that "production in paying quantities" did not include household consumption. The well in that case, however, was not capable of any type of production because the well itself contained unmarketable "sour gas." Id. at ¶ 40. This is not the case here.
 {¶ 79} While there may have been a period where production of gas was down, there were continuous operations for gas or oil, and royalties were duly paid. Gas production was halted only during late 1999 until May 2001 due to the leaky pipes, but *Page 20 
the wells were still producing paying quantities of marketable oil. In fact, the Wuenschels received a royalty check in 2000 for the production of fifty barrels of oil for that year.
 {¶ 80} Shut-in Royalties
 {¶ 81} Third, the Wuenschels argue that the failure of Northwood to pay shut-in royalties during the shut-in period caused the lease to terminate by its own terms. The Wuenschels correctly argue that it is uncontroverted that they were never paid shut-in royalty fees for the period of December 1999 to 2001, but as the wells were never "shut-in," there is no reason why they would be owed a shut-in royalty. The ODNR records reflect that the wells were never shut-in. Production of gas was halted due to the leaky pipes but the wells themselves were not shut-in.
 {¶ 82} As evidence that the wells were shut-in, the Wuenschels point to Mr. Wuenschel's testimony that he knew the valves connected to the leaky pipes were turned off because he spoke with Northwood in 1999 and again in March of 2001, both times asking Northwood "what was going on." To which, Northwood replied, "Nothing." This reply does not indicate either of the wells was "shut-in," but merely that the wells were not producing gas at that time.
 {¶ 83} Nor do the ODNR records reflect that wells were ever "shut-in." Rather, the records reflect that the wells were annually producing from 1985 to 2004. The only time the records indicate nonproduction for a period of time is for Cusano II in 1998, which is not a time frame that is at issue in this appeal.
 {¶ 84} Further, Mr. Barr testified that when wells are considered "nonproducing," the state contacts the lessor and forces them to plug-in the well. This is done by pulling *Page 21 
all the connecting pipes out of the well. Once the well is plugged in that fashion, then the bond and insurance for the wells do not need to be maintained.
 {¶ 85} In this case, the valves were merely closed and the pipes were not disconnected. Moreover, bond and insurance has been maintained with ODNR continuously since the inception of the lease and continues to this day, now by the current lessee, Mr. Barr. ODNR recognized the assignment of the lease from Northwood to Mr. Barr in 2001, and bond and insurance was properly posted by Mr. Barr at that time and has been maintained as is reflected by ODNR's records. Thus, there is no evidence that the wells were "shut-in" even though there is evidence that at times there was nonproduction of gas. During that period, however, there was the production and sale of oil. Thus, it would seem per the terms of the lease no shut-in royalties were owed to the Wuenschels.
 {¶ 86} We find the Wuenschels' second assignment of error to be without merit.
 {¶ 87} The judgment of the Ashtabula County Court of Common Pleas is affirmed.
 CYNTHIA WESTCOTT RICE, J., and TIMOTHY P. CANNON, J., concur. *Page 1